UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jon Gauthier,

        Plaintiff,

v.

James Boyd, Jordan Davis,
and the City of Minneapolis,

        Defendants.

Civil Case No: 15-CV-3068

**AMENDED COMPLAINT[1]**
**JURY TRIAL DEMANDED**
**UNDER FRCP 38**

---

For his Amended Complaint, Jon Gauthier ("Gauthier") states and asserts the following claims against the defendants in the above-entitled action:

**INTRODUCTION**

1. This is an action for money damages resulting from City of Minneapolis ("Minneapolis") Police Officers: James Boyd's ("Boyd") and/or Jordan Davis' ("Davis"), collectively sometimes hereinafter referred as "Police Officers," unreasonable seizure and use of excessive force while acting under color of state law, in violation of Gauthier's well-settled federal civil rights.

2. Minneapolis is a municipality duly incorporated under the law of the State of Minnesota.

---

[1] The sole purpose of this Amended Complaint is to accurately identify Police Officer Jordan Davis, who was erroneously identified as David Jordan in Plaintiff's initial Complaint [Docket 1].

3. Gauthier brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3).

4. The provisions of 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3) confer original jurisdiction of this matter to this Court.

5. Gauthier was and is a citizen of the United States.

6. Gauthier is a Minneapolis resident whose home is located at 1710 James Avenue North.

7. Upon information and belief, Boyd was at all material times herein a citizen of the United States and a resident of the State of Minnesota.

8. Boyd, a sworn police officer licensed by the state of Minnesota is employed by the Minneapolis Police Department and is sued in his individual capacity.

9. Upon information and belief, Davis was at all material times herein a citizen of the United States and a resident of the State of Minnesota.

10. Davis, a sworn police officer licensed by the state of Minnesota is employed by the Minneapolis Police Department and is sued in his individual capacity.

11. On August 27, 2014, at approximately 2:45 a.m., Gauthier's former roommate, Donald Matthew Varnado ("Varnado"), entered Gauthier's upstairs bedroom and awoke him from his sleep.

12. Gauthier asked Varnado to leave his home.

13. Varnado responded to Gauthier's request to leave by swearing at and threatening Gauthier with bodily harm and refusing to leave "no matter what."

14. Slightly before 3:00 a.m., Gauthier sought police assistance to have Varnado removed from his home.

15. Upon arrival at Gauthier's home, Varnado drew the attention of Police Officers Davis and Boyd by making inflammatory accusations spewing vitriol about Gauthier.

16. Police Officers Boyd and Davis separated Varnado and Gauthier from one another by having Gauthier sit on the steps outside of the front door of his home, while Varnado was detained on the front lawn left of the porch and steps where Gauthier was sitting.

17. Police Officers Boyd and Davis observed that Gauthier appeared to be intoxicated and that his cognitive and motor skills were impaired.

18. Police Officers Boyd and Davis requested that Gauthier submit to "breath test" to determine his blood alcohol concentration. Gauthier cooperated with the Police Officers' request and a breath test was administered to him.

19. The results of Gauthier's breath test revealed a blood alcohol concentration reading of 0.20 grams of alcohol per 100 grams of blood; which in police parlance is known as having a "point 2.0 BAC."

20. During Police Officers Boyd's and Davis' questioning of Gauthier, Gauthier asked them if he could use the bathroom.

21. Gauthier stood up to open the front door so that he could go inside to use the bathroom.

22. The Police Officers refused to allow Gauthier to enter his home to use the bathroom; and a short time later, Gauthier defecated in his pants.

23. Notwithstanding the embarrassment and discomfort resulting from soiled pants, Gauthier continued to cooperate with the Police Officers and answer their questions.

24. The Police Officers asked Gauthier what he wanted to do.

25. Gauthier informed the Police Officers that he wanted to go back inside his home to clean himself up and go back to bed.

26. Gauthier understood the Police Officers to give him permission to go back into his home.

27. Gauthier stood up and was inside of the front door to the porch, when either Police Officer Boyd or Davis pulled him off of the porch and over five stair steps slamming him onto the concrete sidewalk approximately four feet away from the stair steps.

28. Gauthier does not know if it was Police Officer Boyd or Davis who pulled him from the front door and the top outdoor front steps and slammed him onto the concrete side walk. For purposes of this Complaint; the police officer who pulled Gauthier from the front door and the top outdoor front steps and slammed him onto the concrete side walk is hereafter identified and referred as the "Battering Officer."

29. The Battering Officer used needless and excessive use by pulling Gauthier, who was especially vulnerable as he was very intoxicated, away from the front door and the top of the outdoor front steps by slamming him onto the concrete sidewalk.

30. As Gauthier was lying on the sidewalk writhing in pain, the Police Officers, repeatedly yelled insults at Gauthier and repeatedly told him to "get the fuck up."

31. After it became evident to the Police Officers that Gauthier could not get up on his own, they called for an ambulance to take him to a hospital.

32. Gauthier's hospital examination revealed that he had suffered serious injuries, including but not limited to, a fractured pelvis, bruised ribs, bruises on his left leg, scrapes on his right leg, bruises and scrapes on his elbows, injuries to his jaw and the "bridge" in his mouth was broken, all as the direct and proximate cause of the Battering Officer's use of needless and excessive use of force resulting from Gauthier being thrown onto the sidewalk.

33. Medical expenses related to the treatment of the injuries that Gauthier suffered as the direct and proximate cause of the Battering Officer's needless and excessive use of force are still accruing and will continue to accrue.

34. Gauthier has lost overtime wages and unnecessarily consumed "sick time" to treat the injuries that are the direct and proximate cause of the Battering Officer's needless and excessive use of force.

**Count I**
**42 USC § 1983 Violations, Use of Excessive Force**

35. Gauthier restates the allegations contained in Paragraphs 1 through 34 against Police Officers Boyd and Davis.

36. Police Officers Boyd and Davis, while acting under color of state law, violated Gauthier's clearly established and well-settled federal civil rights to be free from assaults, battery, excessive force and unreasonable seizure.

37. Police Officers Boyd and Davis deprived Gauthier of his rights by intentionally and maliciously acting and/or by acting with reckless disregard for whether Gauthier's rights would be violated by their actions.

38. Police Officers Boyd's and Davis' actions were objectively unreasonable pursuant to *Graham v. Connor,* 490 U.S. 386 (1989).

39. Gauthier had committed no crime; rather he was the victim of Vanardo's breaking and entering into his upstairs bedroom.

40. Gauthier was always cooperative with and never disobeyed Police Officers Boyd's and Davis' instructions even though their refusal to allow him to use the bathroom resulted in him soiling his pants.

41. Gauthier posed no threat to the safety of Police Officers Boyd and Davis, himself or others.

42. At worst, Gauthier was intoxicated. Police Officers Boyd and Davis recognizing that his cognitive and motor skills were impaired should have handled Gauthier in a manner that provided for his safety and wellbeing.

43. Gauthier was never arrested as there was no reason to detain him.

44. As a direct and proximate result of the acts and omissions of Police Officers Boyd and Davis, Gauthier suffered great bodily and mental harm, medical bills, and other items of damage in an amount to be determined by the jury.

45. Gauthier claims Police Officers Boyd's and Davis' actions were wanton and callous entitling him to punitive damages in an amount to be determined by the jury, as a matter of right under federal common law, *Smith v. Wade,* 461 U.S. 30 (1983).

46. Gauthier is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

47. Minneapolis is liable for Police Officers Boyd's and Davis' actions under the doctrine of *respondeat superior* and MINN. STAT. § 466.02.

### Count II
### Assault

48. Gauthier restates the allegations contained in Paragraphs 1 through 47 against Police Officers Boyd and Davis.

49. Police Officers Boyd and Davis intentionally created an apprehension of immediate physical harm by means of the overt gestures of hurling insults at Gauthier and yelling at him to get up while he lay helpless on the concrete sidewalk.

50. Any reasonable person would also become apprehensive in the face of such threatening conduct.

51. Police Officers Boyd's and Davis' actions is the direct proximate cause of Gauthier's personal injuries described at ¶ 32, *supra*.

52. As a direct and proximate result of the acts and omissions of Police Officers Boyd and Davis, Gauthier suffered great bodily and mental harm, medical bills, and other items of damage in an amount to be determined by the jury.

53. Minneapolis is liable for Police Officers Boyd's and Davis' actions under the doctrine of *respondeat superior* and MINN. STAT. § 466.02.

### COUNT III
### Battery

54. Gauthier restates the allegations contained in Paragraphs 1 through 53 against the Battering Officer.

55. Without Gauthier's consent, the Battering Officer intentionally, harmfully, and offensively touched Gauthier by pulling him from the front door and the top of the outdoor front steps and slamming him onto the concrete sidewalk.

56. The Battering Officer's actions are the direct proximate cause of Gauthier's injuries described at ¶ 32, *supra*.

57. As a direct and proximate result of the acts and omissions of the Battering Officer, Gauthier suffered great bodily and mental harm, medical bills, and other items of damage in an amount to be determined by the jury.

58. Minneapolis is liable for Police Officers Boyd's and Davis' actions under the doctrine of *respondeat superior* and MINN. STAT. § 466.02.

### COUNT IV
### Police Officer Negligence

59. Gauthier restates the allegations contained in Paragraphs 1 through 58 against Police Officers Boyd and Davis, one of whom is the Battering Officer.

60. If Police Officers Boyd's and Davis' actions were not intentional, malicious or in reckless disregard for Gauthier's safety, then their actions were negligent.

61. As licensed police officers, Police Officers Boyd and Davis owe a professional duty to the public, which includes Gauthier, to conform their behavior to the standard of care employed by licensed police officers responding to the same or similar circumstances such as those in the instant case.

62. Police Officers Boyd and Davis breached the duty of care and skill that other police officers would have employed by assaulting, battering and using a degree of force that other police officers responding to the same or similar circumstances such as those in the instant case would not have employed.

63. Police Officers Boyd's and Davis' negligent actions are the direct proximate cause of Gauthier's injuries described at ¶ 32, *supra*.

64. As a direct and proximate result of the acts and omissions of Police Officers Boyd and Davis, Gauthier suffered great bodily and mental harm, medical bills, and other items of damage in an amount to be determined by the jury.

65. Minneapolis is liable for Police Officers Boyd's and Davis' actions under the doctrine of *respondeat superior* and MINN. STAT. § 466.02.

## Prayer for Relief

WHEREFORE, Plaintiff Jon Gauthier prays for judgment against Defendants Boyd, Davis and Minneapolis as follows:

1. As to Count One, a money judgment against Defendants for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 USC § 1988 and prejudgment interest; and,

2. As to Count Two, a money judgment against Defendants for compensatory damages; punitive damages upon the Court ordering that the Plaintiff is entitled to amend his Complaint to make a claim for punitive damages pursuant to Minnesota law, all in an amount to be determined by the jury together with costs and reasonable attorney's fees; and,

3. As to Count Three, a money judgment against Defendants for compensatory damages; punitive damages upon the Court ordering that the Plaintiff is entitled to amend his Complaint to make a claim for punitive damages pursuant to Minnesota law, all in an amount to be determined by the jury together with costs and reasonable attorney's fees; and,

4. As to Count Four, a money judgment against Defendants for compensatory damages in an amount to be determined by the jury together with costs and reasonable attorney's fees; and,

5. For such further relief as this Court deems just and equitable.

Dated: September 15, 2015 /s/ Mark J. Kallenbach
Mark J. Kallenbach, Esq. (146468)
2260 Ridge Drive, No. 13
Minneapolis, MN 55416
Tel.: (952) 593-3858
Fax.: (952) 406-8881
E-mail: markkallenbach@comcast.net
*Attorney for Plaintiff Gauthier*

ACKNOWLEDGEMENT

The undersigned hereby acknowledges that appropriate sanctions may be imposed against the parties and/or their attorneys pursuant to MINN. STAT. § 549.211 if the Court determines that the claims, defenses or other legal contentions contained herein are presented for an improper purpose, unwarranted by existing law, frivolously presented, without evidentiary support, not reasonably based upon knowledge, information and belief or made without reasonable inquiry under the circumstances.

/s/ Mark J. Kallenbach
Mark J. Kallenbach, Esq.